No. 23,964.

J. B. Floersch et al., as Trustees, *Appellees,* v. E. B. Snavely
et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. Contract—*Sale of Oil and Gas Lease—Consideration—Alleged Default of Seller to Comply with Contract—Question of Fact for Jury.* The seller of an oil and gas lease having agreed as a part of the transaction to raise a certain sum, either by the sale of certificates of interest therein to be issued by the buyer, or by the sale of acreage at a price to be agreed upon between such buyer and seller, it is held, in an action by the buyer for the seller's failure to do so, that the evidence was sufficient to take to the jury the question whether the raising of such sum was prevented by the refusal of the buyer to issue the certificates or to agree upon a price at which acreage might be sold.

2. Same—*Duty of Seller Under Terms of Contract—Blue-sky Law.* In the situation above stated, if the seller wished to attempt sales in a state where a permit under a blue-sky law was required therefor, although he was entitled to the coöperation of the seller, so far as that was necessary in attempting to obtain such a permit, it was incumbent upon the seller to take the initiative in the matter, and he could not put the buyer in default by demanding that he procure one. And it is held that the evidence on this point failed to make a *prima facie* case for the defendant.

3. Same—*Petition Alleged Performance by Plaintiff—Proof Admissible Under General Denial.* Whether or not, where a petition alleges that the plaintiff had performed all the terms of the contract sued on that were incumbent on him, the defendant, under a general denial, may prove the plaintiff's failure to do certain things required of him thereunder, it is held that in the present case evidence admitted on that issue in such state of the pleadings cannot be disregarded on appeal, no objection to its admission having been made at the trial.

4. Same—*Effect of Subsequent Agreements.* It is held that an agreement of one holding property as a trustee with a salesman for the sale of interests therein is not affected by a subsequent agreement between the trustee and the beneficiaries of the trust, concerning its administration, providing for the making of such sales by the trustee.

5. Same—*Sale of Oil and Gas Lease—Default of Seller—Measure of Damages.* Where the seller of an oil and gas lease as a part of the transaction agrees to sell an interest in it for a certain sum within a fixed time and fails to do so, the measure of damages for his breach of this part of the contract is ordinarily the difference between such sum and the value of the interest that was to have been sold.

Appeal from Riley district court; Fred R. Smith, judge. Opinion filed November 4, 1922. Reversed.

Floersch v. Snavely.

*A. E. Crane,* of Topeka, and *Ira C. Snyder,* of Manhattan, for the appellants.

*R. P. Evans,* and *George Clammer,* both of Manhattan, for the appellees.

The opinion of the court was delivered by

Mason, J.: On May 28, 1919, E. B. Snavely sold to J. B. Floersch, Carl Floersch and William Lind, as trustees for a group of investors (in which the defendants herein were included) an oil and gas lease on 5,250 acres of Texas land, for $20,000. The contract of sale provided, among other things, that within sixty days Snavely should raise $20,000 by the sale of a part of the lease or an interest or interests therein, which sum should be used to reimburse those who had furnished the purchase price. P. J. Weik and P. F. Dobson became sureties for the faithful performance by Snavely of this part of the contract, the bond being made out, however, for $15,000 because one-fourth in interest of the beneficiaries of the trust, including the defendants, waived its protection. The $20,000 was not raised, and the trustees brought this action against Snavely and his bondsmen on account of his omission in that regard. The defendants filed an answer consisting of a general denial, with a specific allegation that the contract referred to had been superseded by one made the next day between the trustees and their beneficiaries. At the trial the defendants contended that Snavely's failure to raise the $20,000 was caused by the refusal of the plaintiffs to perform their part of the agreement. The court directed a verdict for the plaintiffs, and the defendants appeal. The portion of the contract of sale necessary to be here considered reads:

"It is mutually agreed by and between parties hereto that 1000 acres of the acreage hereinbefore described shall be set apart (said acreage to be agreed upon by the parties hereto), and said acreage so set apart shall be syndicated for $100,000.

"The parties of the second part [the plaintiffs] hereto shall issue trustee certificates covering said $100,000 and the party of the first part [Snavely] for and in consideration of the purchase by the parties of the second part of the above-described lease do hereby covenant and agree that he will sell 20 per cent of said syndicate within sixty days of the execution of this agreement and that he will so sell said twenty per cent for the net sum of $20,000 and will pay said sum to the parties of the second part for the use and benefit of the purchasers and owners of said lease which said purchasers and owners are the beneficiaries named in the Declaration of Trust executed by the parties of the second part. Said $20,000 so accumulated by the sale of said certificates shall be employed and used by the parties of the second part hereto to reimburse said owners.

"The party of the first part further agrees that he will further sell 20 per cent more of the said certificates as rapidly as possible and that the proceeds derived from said sale, which shall not be less than $20,000, shall be used as follows: 20 per cent thereof for commission to the salesman employed to sell said certificates and the balance thereof for the drilling of the first well to be drilled upon said 1000 acres.

"The remaining interest in said syndicate, 60 per cent, shall be divided. among the beneficiaries of said trust in proportions in which they have invested in said lease. The balance of said acreage, 4250, shall be assigned by the parties of the second part to Carl Floersch, trustee, and said acreage shall be sold by P. J. Weik, P. F. Dobson and E. B. Snavely or their agents as exclusive salesmen and the proceeds of said sale shall be distributed among the beneficiaries under said trust in the proportion in which they have contributed to the purchase of said lease. It is mutually agreed that the said P. J. Weik, P. F. Dobson and E. B. Snavely and their agents shall have the exclusive right to sell 4250 acres of said lease at a price agreed upon between themselves and Carl Floersch, trustee, and that said agents shall receive such commission as shall be agreed upon by themselves and said trustee, and it is further agreed that the said Carl Floersch, trustee, shall have full power and authority to issue all due and proper certificates of assignment and all assignments necessary to effect the sale of said acreage.

"It is further expressly agreed and understood that for the purpose of reimbursing said beneficiaries and owners, the party of the first part may and shall have the right and privilege to sell said last-described acreage to pay the proceeds of said sale to parties of the second part, and that so much of the proceeds of said sale shall be so deposited with said second parties as the party of the first part may designate may be applied by him towards the obligations of the party of the first part to reimburse said beneficiaries. And that if the party of the first part shall reimburse said beneficiaries from and out of the proceeds of the sale of the last-described acreage, then and in that event his obligation to sell 20 per cent of said syndicate within 60 days shall cease, provided that nothing herein shall be construed to relieve the party of the first part from his obligation to fully reimburse said beneficiaries on or before 60 days from the execution of this contract. It is the sense and intendment of this contract that the party of the first part is to reimburse the beneficiaries and that he may reimburse them either by selling said certificates in said syndicate or by the sale of said acreage, or both."

1. Stated briefly, the effect of the contract appears to be that the plaintiffs as trustees became owners of the lease by the payment of $20,000 under an arrangement that within 60 days Snavely was to get that amount back for them, either by selling enough shares in 1,000 acres of the lease at a valuation of $100 an acre, or by selling enough other acreage for the purpose, at a price to be agreed upon between Snavely and his associates and one of the plaintiffs. It was conceded that no part of the $20,000 had been raised, and the principal issue involved is whether the evidence re-

quired the submission to the jury of the question whether Snavely
was prevented from carrying out his part of the agreement in this
regard by the refusal of the plaintiffs to perform acts incumbent
on them, necessary to that end.

A trust agreement entered into immediately after the purchase
of the lease, between the plaintiffs and the subscribers to the
funds used in payment therefor, helps to interpret the contract be-
tween Snavely and the plaintiffs, and shows that it was the in-
tention that the plaintiffs as trustees should issue for sale certifi-
cates of ownership of shares in the lease or parts thereof of the par
value of $200 each, and the arrangement to "syndicate" 1,000 acres
appears to have had reference to the sale of certificates of this
character. We think there was some evidence tending to show that
the plaintiffs refused to issue these certificates so as to make them
available for the use of Snavely and his associates and that such
refusal rendered their attempts to sell them futile. Snavely gave
testimony to this effect:

The defendants had some certificates printed and got them ready
for sale. Snavely asked Carl Floersch (who, according to the
plaintiffs' evidence, had charge of the matter) to issue them, and he
said he would not. He asked him for certificates but did not get
any. He wanted the certificates so he could deliver them if he
sold them. "They were to be delivered to the beneficiaries in their
names. We could not sell them unless they had been issued." He
did not, however, ask the trustees to deliver to him a certificate
running to any individual he had sold to.

Weik testified: "I never had a certificate offered to me for sale.
Mr. Floersch said he would not sign a certificate. . . . I had
some sales made. . . . I asked Mr. Floersch to issue certifi-
cates to me. I did not tell him who my purchaser was. . . .
Mr. Floersch said he would not issue any because of the blue-sky
law." J. B. Floersch testified that no one ever asked him for any
certificates; that Carl [Floersch] was to issue them; that none
were issued; that Carl did not issue them because the defendants
did not perform their part of the contract; that the defendants
could have got them; that the plaintiffs were ready to issue them.
Carl Floersch testified that Snavely never demanded that he should
issue any certificates; that none were delivered although some were
signed. It is of course not now important that the testimony of
the defendants was contradicted. Issues of fact were presented,

which should have gone to the jury, as to who was in fault in the matter of the failure to issue certificates, and as to what effect this had upon their intended sale.

Snavely also testified: "Mr. [Carl] Floersch and I never agreed on the price or the number of acres of land in the oil lease that was left over the 1,000 acres to be syndicated. I asked him to give me a price at which it could be sold, and he did not do it. He said he did not want to give a price until the rig was on the ground. He did not give me a price. . . . I told him this acreage could be sold if he would put a price on it. He said he would not put a price on the acreage until there was a rig on it." Snavely had the option of raising the $20,000 or a part of it by the sale of acreage (other than the thousand acres to be "syndicated") at a price to be agreed upon between the defendants and Carl Floersch, and if there was in fact a refusal to agree upon a price the benefit of this provision of the contract was denied to the defendants. Whether this was the case was another matter to be submitted to the jury.

2. The defendants conceive that after June 17, 1919, the date the present blue-sky law (Laws 1919, ch. 153) took effect, the certificates could not be sold in Kansas without a permit from the bank commissioner, and that it was the duty of the plaintiffs to obtain one. It is at least doubtful whether such a permit was not required by the law in force when the contract was made, by virtue of "speculative securities" being therein so defined as to include "all securities into the specified par value of which the element of chance or hazard of speculative profit or possible loss equal or predominate over the elements of reasonable certainty, safety and investment," and "all securities the value of which materially depends on proposed or promised future promotion or development rather than on present tangible assets and conditions." (Gen. Stat. 1915, § 9458.) That, however, need not be determined. While the property to be sold belonged to the plaintiffs, and the defendants in a sense were to sell it for them, they did not occupy the position of ordinary salesmen. Snavely had agreed to raise $20,000 by the sale of these certificates as a part of the contract by which he sold the lease to the plaintiffs. It was incumbent upon the plaintiffs to coöperate with him and his associates in marketing the certificates, and in that connection to take such proper steps toward the obtaining of a permit as could only be taken by them. But in view of Snavely's relation to the matter it was for him to take the initiative

in the matter if he wished to sell in states requiring a permit, calling upon the plaintiffs for such action on their part as might be necessary. According to his own testimony he did no more in this regard than to ask the plaintiffs to get a permit. This did not have the effect of putting them in default.

3. The plaintiffs contend that the judgment should be affirmed on the ground that the answer did not present the issues which have just been discussed. The petition alleged that the plaintiffs had fully complied with all the terms of the contract sued upon which were incumbent upon them. Aside from the allegation that the contract sued upon had been superseded, which does not affect the present question and will be considered later, the answer was a mere general denial. There are decisions to the effect that under similar pleadings the defendant cannot show a failure of the plaintiffs to perform a condition on his part, but must, if he is to rely on that as a defense, plead it specifically, setting out the particulars of the default (13 C. J. 739, note 20.; *National Sur. Co. v. Queen City Co.*, 63 Colo. 105, and authorities collected at page 108), although some of the cases cited are affected by special statutes or exceptional circumstances. It is clear that the purpose of written pleadings will be better subserved by such a practice. But whether or not the evidence concerning the issuance of the certificates, the agreement on a price at which acreage might be sold, and the blue-sky law, was within the issues presented by the pleadings as they stood, it was admitted, some of it without objection, and cannot now be disregarded. The plaintiffs in making their case in chief testified on direct examination that no demand was made on them for the certificates, and their evidence as to their attitude in that matter seems as full as could be desired. Had the point that the pleadings presented no issue concerning the issuance of the certificates or the pricing of the acreage been made at the trial and sustained it is possible that leave to amend the answer might have been obtained and acted upon.

4. The claim of the defendants that the rights of the plaintiffs under their contract with Snavely were affected by their subsequent agreement with the beneficiaries for whom they were trustees is without merit. The later contract related to the manner in which the trust was to be administered. It called for the sale by the plaintiffs of "units" or certificates of interest in the lease, but the performance of the first contract would have been in fulfillment of this arrangement and not inconsistent with it.

5. Judgment was rendered for $15,000. The defendants contend that if liability were established the recovery should have been limited to the actual damage the plaintiffs suffered by the failure of Snavely to sell certificates or acreage to the amount of $20,000, and as the trustees still had the lease out of which the interests to be sold for this sum were to have been taken, the loss to all the beneficiaries could not have been as much as $20,000, and the loss to those protected by the bond could not have been as much as $15,000. The plaintiffs suggest that this question was not raised in the court below and ought not to be considered here. That fact, if established, might be important if the judgment were not to be reversed upon other grounds. Inasmuch as a new trial is to be had it is desirable that the proper measure of damages be now determined. The action does not involve a rescission of the contract for the purchase of the lease by the plaintiffs. They still have the property which Snavely undertook to sell for $20,000. We see no reason why the $15,000 which they seek to recover should not be diminished by the value of what they would have parted with to obtain that sum, unless the difference should be made up by special damages growing out of exceptional circumstances, which have not been pleaded.

The judgment is reversed, and the cause is remanded with directions to grant a new trial, to be held upon these issues only— whether the plaintiffs by failing to issue certificates when they should have done so or by refusing to set a price for which acreage might be sold, prevented Snavely from raising the $20,000 by the sale of certificates or acreage, and if not, how much loss the plaintiffs suffered by reason of the sum not being raised in that manner.